UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                    )
CREDIT NORTHEAST Inc.,              )
                                    )
       Plaintiff,                   )
                                    )
  v.                                ) C.A. No. 07-355 S
                                    )
GLOBAL EQUITY LENDING, INC., et al.,)
                                    )
       Defendants.                  )
                                    )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

    On April 2, 2010, Magistrate Judge David L. Martin granted the motion of Plaintiff Credit Northeast Inc. for entry of default against Defendants Global Equity Lending, Inc. ("Global"), World Leadership Group, Inc. ("WLG"), and Hubert Humphrey ("Humphrey").  On May 3, 2010, the Magistrate Judge ordered Defendants to pay $10,300 in attorney's fees and costs incurred by Plaintiff in bringing the motions to default. Defendants appeal the entry of default and the award of fees. Plaintiff requests an increase in the award.  For the reasons set forth below, the Court affirms Judge Martin's orders.

I.  Background

On September 19, 2007, Plaintiff filed a complaint against Global alleging breach of contract, fraud, and negligence. On October 7, 2008, Plaintiff added WLG and Humphrey as defendants.

Global's counsel moved to withdraw on July 31, 2008. By an order dated September 11, 2008, Judge Martin stated that he would grant the motion on October 13 and that Global would have to obtain new counsel by that date or face potential default. Global did not comply with the order. Judge Martin ordered Global to appear on November 24, 2008 and show cause why default should not enter. Global finally hired new counsel, who entered an appearance one day before the show cause hearing.

Meanwhile, on or about August 13, 2008, Plaintiff filed a motion to compel the production of documents in response to discovery requests to which Global had failed to respond. A hearing on that motion was held on November 3, but Global had no counsel present. By order dated November 6, 2008, Judge Martin ordered Global to produce the documents by November 24 or face potential default. On November 23, Judge Martin granted Global's motion for extension of time to comply with the November 6 order but ordered it to pay the costs associated with Plaintiff's filing of the motion to compel. Global never complied, refusing to furnish certain documents and failing to pay Plaintiff's costs.

In February 2009, Plaintiff served discovery requests on WLG and Humphrey. They did not respond. Plaintiff again filed motions to compel Defendants to answer, produce documents, and appear at depositions. Judge Martin granted the motions and set April 29, 2009 as the deadline for production.

On April 29, WLG and Humphrey filed an emergency motion to extend the deadline to May 1. This Court granted the motion, but WLG and Humphrey missed the deadline anyway. Defendants also failed to produce discovery responses for depositions scheduled for May 4, 2009.

On May 6, 2009, Plaintiff filed a motion to hold WLG and Humphrey in contempt. They replied that they had responded to interrogatories and requests for production to date. After substantial briefing and a hearing, Judge Martin issued an order on June 29, 2009. He found default to be "too harsh a sanction . . . . [a]t this juncture" but ordered, among other things, that (1) Defendants' objections to Plaintiff's discovery requests be stricken and Defendants provide complete responses to the discovery requests within 21 days of the order; (2) Defendants pay Plaintiff's attorney fees for bringing the motion to compel; (3) Plaintiff be allowed to take another deposition of Humphrey or of another Rule 30(b)(6) designee of WLG at Defendants' expense; and (4) Plaintiff be allowed to reconvene the deposition of Humphrey, at Humphrey's expense.

On November 24, 2009, Plaintiff, faced with Defendant's violations of the June 29, 2009 and November 6, 2008 orders, filed motions for entry of default against all Defendants. After a hearing, Judge Martin concluded that Defendants' pattern of conduct was reprehensible and went to the merits of the case. In an order dated April 2, 2010, he granted the motions for entry of default. He also granted Plaintiff's request for attorney's fees and costs associated with bringing the motions to default, and ordered Plaintiff to submit an affidavit detailing its costs. On May 3, 2010, after considering Plaintiff's affidavit, Judge Martin awarded Plaintiff $10,300.

II. Discussion

Defendants make four objections to Judge Martin's orders: (1) Defendants did not give written consent for Judge Martin to hear the case; (2) Defendants preserved their personal jurisdiction defense; (3) default is an improper sanction under the circumstances; and (4) the grant of legal fees is improper.

A. Judge Martin's Authority

Citing to 28 U.S.C. § 636(c), Defendants claim that they have not consented to Judge Martin's exercise of jurisdiction over this case and were not made aware of their right to withhold such consent. It is not clear whether this argument aims to suggest that Judge Martin had no authority at all to preside over the case or that he had no authority to issue an

order entering default and should have issued a report and recommendation instead. To the extent the latter issue is implicated, it is dealt with in Part II(B)(a) below. If the argument is that Judge Martin had no authority to hear the case at all, it is misplaced. The operative provision here is subsection (b), not (c), of 28 U.S.C. § 636. This Court assigned certain aspects of this matter to Judge Martin pursuant to § 636(b), which does not require the parties' consent. Judge Martin was thus clearly within his authority to preside over the aspects of the case that are at issue here.

B. The Entry of Default

a. Standard of Review

District court review of a magistrate judge's decision is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. Rule 72 says that decisions on "nondispositive" matters are reviewed under a "clearly erroneous or [] contrary to law" standard (Rule 72(a)) while those on "dispositive" matters are reviewed de novo (Rule 72(b)(3)). Section 636 is a bit more complicated. It provides, first, that

> a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief

5

> can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A). It goes on to state that the motions excepted in subparagraph (A) (as well as some other matters) can also be referred to a magistrate judge – with the difference that with respect to these motions the magistrate shall issue "proposed findings of fact and recommendations for the disposition" (more commonly known as a "report and recommendation") (§ 636(b)(1)(B)), which is reviewed de novo (§ 636(b)(1)). Finally, the statute provides that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

Plaintiff argues that because a motion for entry of default is not on the list of excepted motions in § 636(b)(1)(A), the entry of default is reviewed under the clearly erroneous standard. But it is not so easy. Reading Rule 72 and Section 636 together, federal courts have recognized that even a pretrial matter not on the § 636(b)(1)(A) excepted list (as well as a matter referred under § 636(b)(3)) must be reviewed de novo if its disposition is "dispositive of a claim or defense" within the meaning of Rule 72. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 5-6 (1st Cir. 1999) (rejecting the interpretation

6

"that dispositive motions are those excepted motions specifically enumerated in section 636(b)(1)(A), and no others" and holding instead that "that enumeration informs the classification of other motions as dispositive or nondispositive") (internal citations omitted); see, e.g., Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 74 (1st Cir. 2001) (declining to decide whether a Rule 55(c) motion to vacate a default was referable to a magistrate under § 636(b)(1)(A), and thus subject to clear error review, or whether it could only have been referred under §§ 636(b)(1)(B) or 636(b)(3)); see generally 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3068.2 ("Appreciating that the statutory language was animated by . . . constitutional concerns even before Rule 72 was adopted, the lower courts keyed their review not only to the checklist of motions contained in Section 636(b)(1)(A) but also to the underlying considerations of the dispositive-nondispositive dichotomy.") (citing cases from various jurisdictions). This is as it should be, for it would raise constitutional red flags if non-Article III judges were to render final judgments on litigants' disputes without their consent. See United States v. Flaherty, 668 F.2d 566, 585 (1st Cir. 1981) ("Speaking broadly, the rationale for [the dispositive-nondispositive] distinction is that only an Article

III court, not a magistrate, may constitutionally enter a final judgment.").

The determinative standard of review inquiry, then, is whether Judge Martin's entry of default constitutes a dispositive ruling. If it does, it should be reviewed de novo; if not, for clear error. This Court has found no First Circuit precedent on the question, which is not an easy one. But it need not be, and is not, answered here.[1] The discovery abuses in this case were so egregious that Judge Martin's entry of default would be affirmed under either standard of review. For the purposes of this analysis, then, the Court treats the Magistrate Judge's order as a report and recommendation and applies the de novo standard.

 b. The Propriety of Entering Default

In deciding to enter default, Judge Martin recounted Defendants' litany of discovery abuses (Order at 2-10, 23-29, 31-35, Apr. 2, 2010, ECF No. 120), some of which have been summarized in Part I above. He also noted that the milder

---

[1] There is precedent in this district for a magistrate judge granting default by order and the district judge affirming the order. See Estate of Ungar ex rel. Strachman v. Palestinian Auth., 325 F. Supp. 2d 15, 40 (D.R.I. 2004) (noting that the magistrate judge granted default and Judge Lagueux affirmed). But Ungar does not say what standard of review Judge Lagueux applied and why. This Court thus finds it more prudent to leave the standard of review question open, especially as nothing depends on it in this case.

8

sanctions he had imposed earlier had not ended the abuse. (Id. at 29-30, 35-36.) Defendants impeded discovery and stonewalled the progress of the case. They continually disobeyed court orders and shrugged off warnings of impending default, flouting the Court's authority and undermining its efforts to manage the litigation. Reviewing the facts anew, this Court concludes that the Magistrate Judge's entry of default was not a rash reaction to an isolated instance of non-cooperation but a considered response to a pattern of abuse that milder sanctions had failed to deter. Under these circumstances, entry of default is not excessively harsh and must be affirmed.

      c.   Personal Jurisdiction

Defendants argue that Humphrey and WLG have preserved their personal jurisdiction defense. Generally, under Rule 12(h) of the Federal Rules of Civil Procedure, a personal jurisdiction defense is waived if not asserted at the earliest possible time. See Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 691 (1st Cir. 1992). Here, Humphrey and WLG did raise the personal jurisdiction defense in their answer to the complaint. But "even a defending party who seasonably asserts Rule 12 defenses in his answer may forfeit those defenses by his subsequent actions." Plunkett v. Valhalla Inv. Servs., Inc., 409 F. Supp. 2d 39, 41 (D. Mass. 2006). As this Court has stated, determining whether forfeiture

9

has occurred is not subject to a "bright line rule" but requires "consider[ing] the passage of time and a defendant's procedural moves in [the] larger context of the case as a whole." Pruco Life Ins. Co. v. Wilmington Trust Co., 616 F. Supp. 2d 210, 216 (D.R.I. 2009).

In this case, Judge Martin noted that Defendants participated in the litigation (albeit in a dilatory way) for 15 months without filing a motion to dismiss for lack of personal jurisdiction. (Order at 16.) He then cited decisions from this jurisdiction finding forfeiture by conduct of Rule 12 defenses in similar circumstances. (Id. at 16-17 (citing Manchester, Pruco, and Plunkett).) Judge Martin's factual and legal discussion was thorough and persuasive, and there is no reason to disturb his judgment.[2]

C.  Attorney's Fees and Costs

Defendants object to the award of attorney's fees and costs. Plaintiff complains that the award was too low. Judge Martin's award of costs in connection with Defendants' discovery abuses plainly qualifies as a nondispositive decision subject to clear error review. See Phinney, 199 F.3d at 6 ("Motions for sanctions premised on alleged discovery violations . . . . ordinarily should be classified as nondispositive.").

---

[2] It is, of course, immaterial that Judge Martin used the term "waiver" instead of "forfeiture."

Given the pattern of discovery abuse described above, the award of fees was proper. And the amount is carefully calculated and not clearly erroneous or contrary to law. Plaintiff's objection turns on a misreading of the scope of the award. Plaintiff asserts that Judge Martin "narrowed the acceptable period from November 20, 2009 through January 23, 2010" and seeks the costs accruing after January 23. (Pl.'s Reply to Def.s' Obj. 6, May 17, 2010 (ECF No. 128).) In fact, Judge Martin did account for the work performed after January 23, 2010, but disregarded any claims prior to November 20 ($3,850) and from November 25, 2009 until January 23, 2010 ($11,950). The funds Plaintiff seeks to add are thus already included in the award.

III. Conclusion

For the foregoing reasons, Judge Martin's order for entry of default and order awarding attorney's fees are AFFIRMED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: November 3,2010